# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01996-COA

**LARRY GENE SINGLETON A/K/A LARRY SINGLETON A/K/A LARRY G. SINGLETON**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2013 |
| TRIAL JUDGE: | HON. JAMES MCCLURE III |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNTS I AND V, GRATIFICATION OF LUST, AND SENTENCED TO FIVE YEARS ON EACH COUNT; COUNTS II, III, AND IV, SEXUAL BATTERY OF A CHILD UNDER FOURTEEN YEARS OF AGE, AND SENTENCED TO TWENTY YEARS ON EACH COUNT; COUNTS VI, VII, AND VIII, SEXUAL BATTERY OF A CHILD AT LEAST FOURTEEN BUT UNDER SIXTEEN YEARS OF AGE, AND SENTENCED TO TWENTY YEARS ON EACH COUNT; AND COUNTS IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, AND XVIII, POSSESSION OF CHILD PORNOGRAPHY, AND SENTENCED TO TEN YEARS ON EACH COUNT, WITH THE SENTENCE IMPOSED IN COUNT IX TO RUN CONSECUTIVELY WITH SENTENCES IMPOSED IN COUNTS I THROUGH VIII, AND WITH THE SENTENCES IN ALL OTHER COUNTS TO |

RUN CONCURRENTLY WITH ONE ANOTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT FOR 353 DAYS SERVED, AND TO PAY $1,000 TO THE MISSISSIPPI CHILDREN'S TRUST FUND AND A $50,000 FINE FOR EACH OF COUNTS IX THROUGH XVIII, WITH $50,000 SUSPENDED FOR EACH OF COUNTS IX THROUGH XVIII

DISPOSITION: AFFIRMED: 11/25/2014

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Larry Gene Singleton was convicted of gratification of lust, sexual battery of a child under fourteen years of age, sexual battery of a child at least fourteen but under sixteen years of age, and possession of child pornography under Mississippi Code Annotated sections 97-5-23, 97-3-95(1)(d), 97-3-95(1)(c), and 97-5-33(5), respectively. Singleton argues the trial court erred when it: (1) denied Singleton's motion to sever certain counts in the indictment; (2) admitted Exhibit 5 into evidence; and (3) denied Singleton's motion to suppress his custodial statement. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. From approximately March 2005 to October 2012, Singleton engaged in a sexual relationship with Daniel Doe,[1] a child who lived next door to Singleton. Daniel first went

_____

[1] The name of the victim has been changed for confidentiality purposes.

2

to Singleton's house to play with Singleton's grandson and to do odd chores. When Daniel turned eleven, however, the nature of the relationship changed.

¶3.     Initially, Singleton showed Daniel his genitalia and asked to see Daniel's. Singleton told Daniel "that it was normal for guys to practice for when a girl comes around" and began "stroking [Daniel] and stuff like that." The physical contact escalated when Singleton started performing oral and anal sex with Daniel. Contemporaneously to some of these earlier acts, Singleton took pictures of a nude, prepubescent Daniel.

¶4.     As Daniel got older, Singleton bribed him with alcohol, cigarettes, and pornography in exchange for sex, with the final encounter occurring in October 2012. Shortly thereafter, Daniel contacted the police regarding the acts perpetrated by Singleton.

¶5.     On November 28, 2012, investigators with the Tate County Sheriff's Department arranged for a sting operation. Daniel called Singleton to talk about the sexual abuse while investigators listened to and recorded the telephone conversation.

¶6.     During the phone conversation, Singleton confirmed some of the abuse, gave Daniel advice about sex, and commented on the changes in Daniel's body from when he was a child. Singleton also admitted he erased all of the pictures he took of Daniel years earlier. At the end of the conversation, Singleton asked if Daniel recorded the conversation and asked to see him again soon.

¶7.     Based on Daniel's statement and the recorded phone conversation, the Tate County Sheriff's Department executed search and arrest warrants for Singleton on December 3, 2012. Singleton was arrested, and law enforcement seized a personal computer and

3

pornographic pictures from his home.

¶8. At the time of his arrest, Singleton told the officers he needed his medication because he suffered from high blood pressure, a heart condition, and chronic obstructive pulmonary disease (COPD). Singleton was allowed to bring his medication with him and, once at the jail, a nurse evaluated Singleton. The nurse noted Singleton's noncompliance with certain medications, but did not observe any other medical abnormalities.

¶9. Investigators Bill Ellis and Stephanie Huddleston interrogated Singleton following his medical evaluation. Singleton remained talkative and relaxed during the questioning. At no point did Singleton indicate he felt ill, ask for the interrogation to stop, or state that he wanted an attorney present.

¶10. Singleton continued to deny all allegations against him until the investigators played the recorded phone conversation between Singleton and Daniel. After hearing the recording, Singleton confirmed the phone number Daniel called was his and the man on the recording sounded similar to him. Singleton eventually admitted the allegations made against him.

¶11. Prior to his trial, Singleton filed a motion to suppress his custodial statement and a motion to sever certain counts in the indictment. On October 31, 2013, the trial court held evidentiary hearings and ultimately denied both motions.

¶12. Singleton was tried on November 18 and 19, 2013. The jury returned a verdict of guilty on all eighteen counts. On November 21, 2013, the trial court sentenced Singleton to serve thirty years in custody of the Mississippi Department of Corrections and denied Singleton's motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative,

4

a new trial. Singleton now appeals.

## ANALYSIS

1. *Whether the trial court erred in denying Singleton's motion to sever the charges for possession of child pornography from the charges for sexual battery and gratification of lust.*

¶13. Singleton argues that the trial court erred in the denial of his motion to sever certain counts in the indictment. Specifically, Singleton contends that the charges for possession of child pornography should have been severed from the charges for sexual battery and gratification of lust. He argues that it was error to conclude that the time period between the acts was insignificant because the State could not prove the exact time when the pictures were taken. Due to this uncertainty, Singleton asserts the photographs could neither serve as evidence in the non-pornographic counts, nor could all the counts be considered as intertwined.

¶14. This Court reviews a trial court's denial of a motion to sever a multi-count indictment for abuse of discretion. *Harper v. State*, 102 So. 3d 1154, 1158 (¶9) (Miss. Ct. App. 2011) (citing *Rushing v. State*, 911 So. 2d 526, 532 (¶12) (Miss. 2005)). The relevant statute for a multi-count indictment states:

> Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

Miss. Code Ann. § 99-7-2(1) (Rev. 2007).

¶15. "When a motion to sever is made, the State bears [the] burden of making out a prima

5

facie case showing the offenses charged are within the language of the statute." *Harper*, 102 So. 3d at 1158 (¶9) (citing *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991)). "If the State meets its initial burden, the defendant may thereafter rebut the State's case by showing the 'offenses were separate and distinct acts or transactions.'" *Rushing*, 911 So. 2d at 533 (¶14) (quoting *Corley*, 584 So. 2d at 772).

¶16.    To comply with the statute, the trial court must conduct a hearing to determine whether or not to sever the counts. *Golden v. State*, 968 So. 2d 378, 382 (¶12) (Miss. 2007). If the trial court holds such a hearing, this Court gives deference to the trial court's findings, unless an abuse of discretion occurred. *Broderick v. State*, 878 So. 2d 103, 105 (¶6) (Miss. Ct. App. 2003) (citing *Ott v. State*, 722 So. 2d 576, 579 (¶15) (Miss. 1998)).

¶17.    The Mississippi Supreme Court outlined three criteria a trial court must consider during a hearing on a motion to sever: "(1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; [and] (3) . . . whether the crimes are interwoven." *Stribling v. State*, 81 So. 3d 1155, 1162 (¶29) (Miss. Ct. App. 2011) (citing *Rushing*, 911 So. 2d at 533 (¶14)).

¶18.    At his hearing, Singleton sought to sever the possession-of-child-pornography counts from the sexual-battery and gratification-of-lust counts. Singleton contended that the photographs allegedly depicting child pornography lacked date and time stamps. Thus, Singleton argued, the State could not prove Singleton took the photographs contemporaneously to the alleged occurrences of abuse.

¶19.    The trial court evaluated the evidence proffered at the hearing under the *Corley*

6

standards and stated:

> [T]he Court should consider whether the time period between occurrences is insignificant, which the Court finds it is in this matter. Whether evidence proved in each count would be admissible to prove each of the other counts, . . . and then three [sic] whether the crimes are interwoven. The Court finds they're interwoven[;] this is a motion to sever for a separate trial on this issue[;] the Court finds that these are alleged pictures of the victim, of the alleged victim, and therefore I'm going to deny the motion to sever.

Thus, the trial court found the photographs and allegations of abuse met the test for a proper multi-count indictment set forth in *Corley*.

¶20.   The counts in the indictment spanned a period from around March 2005 to December 2012, approximately seven years. Through testimony by Daniel and the investigators, the State proffered a likely time period for the photographs of only one to two years, beginning from 2005 until about 2007, although the exact time period remained unknown.

¶21.   In several cases, the Mississippi Supreme Court has upheld trial court decisions that found several months or even years to be insignificant periods of time to compel the severance of multi-count indictments. *Easley v. State*, 46 So. 3d 345, 347 (¶12) (Miss. 2011) (no reversible error when the trial court did not sever four counts involving three different victims over the course of four years); *Rushing*, 911 So. 2d at 536 (¶17) (five months during which three counts occurred was an insignificant amount of time); *Eakes v. State*, 665 So. 2d 852, 861-62 (Miss. 1995) (similar acts with the same victim over a five-month period an insignificant amount of time); *Allman v. State*, 571 So. 2d 244, 249 (Miss. 1990) (similar acts against the same victim over nine months part of a common scheme).

¶22.   Here, the trial court determined that similar acts with the same victim over several

years established a common scheme or plan. In *Broderick*, this Court affirmed a trial court's finding that similar acts with two victims over a two-year period comprised a common scheme. *Broderick*, 878 So. 2d at 105 (¶¶7-8). While a period of up to seven years is considerably longer than the occurrences in other cases, the time period remains insignificant unless the trial court committed an abuse of discretion.

¶23. To identify an abuse of discretion, this Court "first determines whether the trial court 'applied the correct legal standard.'" *Greater Canton Ford Mercury, Inc. v. Lane*, 997 So. 2d 198, 202 (¶12) (Miss. 2008) (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)). This Court then must decide if the trial court's holding was one of the possible reasonable decisions the court could have reached. *Id.*

¶24. In denying Singleton's motion to sever, the trial court used the proper legal standard to reach a reasonable conclusion. The trial court considered the factors of similar conduct, the same victim, and the time period to find that all of Singleton's acts constituted a common scheme or plan. The trial court, therefore, did not abuse its discretion in denying Singleton's motion to sever. This issue is without merit.

>    *2.     Whether the trial court erred in the admission of Exhibit 5.*

¶25. Next, Singleton contends the trial court improperly admitted Exhibit 5 as character evidence under Mississippi Rule of Evidence 404(b). Further, Singleton argues the prejudicial nature of the exhibit outweighed its probative value under Mississippi Rule of Evidence 403. We find that Singleton failed to properly preserve this issue for appeal. Thus, this Court is procedurally barred from reviewing the issue.

8

¶26. To preserve an issue for appellate review, "a timely objection stating the specific ground of objection is required under [Mississippi Rule of Evidence] 103(a) if error is to be predicated upon a ruling which admits evidence." *Dupuis v. State*, 872 So. 2d 724, 728 (¶17) (Miss. Ct. App. 2004) (citations omitted). "It has been held consistently that the failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned [on appeal]." *Moawad v. State*, 531 So. 2d 632, 634 (Miss. 1988) (citations omitted).

¶27. At trial, Singleton failed to object to the admission of Exhibit 5. When the State introduced Exhibit 5 for admission into evidence, Singleton's counsel and the trial court exchanged the following:

| COURT: | Any objection, Mr. Walker? |
|---|---|
| DEFENSE COUNSEL: | Judge, I don't object as to what they demonstrate, but I cannot concede that Mr. Singleton took the pictures. |
| COURT: | So what's the basis of your objection? |
| DEFENSE COUNSEL: | Judge, you know, I can't argue that they accurately and truly depict what's shown in the pictures, so I don't have a basis to object on that. So I guess in summary *I do not have an objection*. |

(Emphasis added).

¶28. Further, when the State sought to admit the exhibit into evidence, the trial court asked if Singleton objected. Singleton's counsel replied, "No, sir, Your Honor," and the exhibit was entered into evidence without objection. Singleton neither objected at trial nor raised

9

the issue prior to this appeal. Therefore, Singleton failed to properly preserve this issue for appeal. This issue is without merit, as it is procedurally barred.

> ### 3. Whether the trial court erred in denying Singleton's motion to suppress his custodial statement.

¶29. Singleton argues that it was error for the trial court to deny his motion to suppress his custodial statement. Singleton challenges the validity of his confession due to his altered mental state from his lack of medication and certain religious references made during his interrogation, both of which he argues impeded his ability to give an accurate and voluntary statement.

¶30. "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial court applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." *Thorson v. State*, 895 So. 2d 85, 115 (¶73) (Miss. 2004) (quoting *Lee v. State*, 631 So. 2d 824, 826 (Miss. 1994)).

¶31. "This Court has held that '[w]hen a criminal defendant objects to the admission of his confession, arguing it was involuntary, the trial court must conduct a hearing outside the presence of the jury. At the hearing, the burden is on the State to prove voluntariness beyond a reasonable doubt.'" *Kleckner v. State*, 109 So. 3d 1072, 1081 (¶18) (Miss. Ct. App. 2012) (quoting *Pinkston v. State*, 50 So. 3d 1027, 1029 (¶8) (Miss. Ct. App. 2010)).

¶32. When a trial court inquires into the voluntariness of a confession, the trial court, as the fact-finder, must "ascertain, under the totality of the circumstances and beyond a

reasonable doubt, that the defendant's statement was freely and voluntarily given . . . ." *Chim v. State*, 972 So. 2d 601, 603 (¶9) (Miss. 2008) (quoting *Baldwin v. State*, 757 So. 2d 227, 234-35 (¶8) (Miss. 2000)).

¶33.    In evaluating the totality of the circumstances, the trial court should consider "the defendant's experience and familiarity with the criminal justice system, intellectual capacity, educational background, degree of literacy, emotional state and any mental disease or other defect." *Brown v. State*, 839 So. 2d 597, 600 (¶10) (Miss. Ct. App. 2003) (citing *Holland v. State*, 587 So. 2d 848, 860 (Miss. 1991)).

¶34.    For a valid confession, the trial court must determine if the defendant voluntarily, knowingly, and intelligently waived his rights to counsel and against self-incrimination. *Chim*, 972 So. 2d at 603 (¶7) (citing *Miranda v. Arizona*, 384 U.S. 436, 471 (1966) (mandating that the custodian read the accused his or her right to remain silent and right to counsel prior to an interrogation)).

¶35.    A voluntary waiver of one's *Miranda* rights is one made with "free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at (¶8) (quoting *Coverson v. State*, 617 So. 2d 642, 647 (Miss. 1993)). Further, a waiver is intelligently and knowingly made if the defendant has a "full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citations omitted).

¶36.    Investigator Huddleston testified that Singleton was read his *Miranda* rights and was afforded the opportunity to read and sign a waiver of his rights. Investigator Huddleston further testified that Singleton appeared to understand his rights, did not ask any questions,

11

and voluntarily signed the waiver. Singleton, however, testified he did not remember signing a waiver, even though he conceded the signature on the waiver was his.

¶37. Regardless, Singleton contended that he did not voluntarily give a self-incriminating statement. At the hearing on his motion to suppress and at trial, Singleton asserted two bases for the alleged involuntariness of his statement: (1) the use of the phrase "come to Jesus" by one of the investigators exploited his religious beliefs and intimidated him into confessing, and (2) the deprivation of medication for his high blood pressure, COPD, and heart disease placed him in a confused and "foggy state" during the portion of the interrogation when he confessed.

### A. Religious Reference

¶38. Singleton asserts that his confession resulted from pressure and intimidation from the investigators. Singleton testified that Investigators Ellis and Huddleston "play[ed] good cop and bad cop," which led to a feeling of intimidation. Singleton primarily contends, however, Investigator Ellis coerced Singleton into confessing when he made the remark that it was time for Singleton to "come to Jesus."

¶39. Singleton, a preacher for approximately fifty-four years, argues that Investigator Ellis took advantage of his religious beliefs by using Jesus to elicit a confession. The United States Supreme Court has held "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

¶40. The *Connelly* Court further held "the Fifth Amendment privilege [against self-

incrimination] is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Id.* at 170 (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)). In fact, the Supreme Court has found that the use of religious references does not automatically render a confession involuntary. *Berghuis v. Thompkins*, 560 U.S. 370, 386 (2010) (religious line of questioning during interrogation did not amount to coercion and did not render confession involuntary).

¶41. In this instance, Investigator Ellis told Singleton that it was "time to come to Jesus" after the investigators played the tape-recorded conversation between Singleton and Daniel, and Singleton continued to deny his involvement with Daniel. Investigator Ellis testified his use of the phrase was merely to get Singleton to tell the truth in light of the incriminating evidence.

¶42. The Mississippi Supreme Court held that "[a] mere exhortation to tell the truth is not an improper inducement that will result in an inadmissible confession." *Harden v. State*, 59 So. 3d 594, 605 (¶26) (Miss. 2011) (citing *Ruffin v. State*, 992 So. 2d 1165, 1172 (¶20) (Miss. 2008)). While Singleton stated he found the remark offensive, Investigator Ellis testified he did not use any threatening or intimidating language or tone that would constitute coercion. This inducement to tell the truth without more does not rise to the level of coercion. Thus, the religious reference did not render Singleton's statement involuntary.

### B. Singleton's Unmedicated State

¶43. Singleton further contends he lacked the proper mental state to confess due to a deficiency in his medication. Singleton testified that, at the time of his interrogation, he took

13

approximately half of his medication because he could not afford the other medications. Singleton testified he ran out of the medication nearly ten days prior to his arrest. Nevertheless, Singleton maintains his unmedicated state affected him during his confession.

¶44. Courts have held that the mental condition of the defendant does not per se render a confession involuntary, but mental state must be considered within the totality of the circumstances. *Kircher v. State*, 753 So. 2d 1017, 1026 (¶37) (Miss. 1999) (affirming the trial court's finding that a defendant's confession while in the hospital and medicated was voluntary). Further, "[i]ntoxication or sickness does not automatically render a confession involuntary. The admissibility of a confession depends on the degree of intoxication." *Id.* (quoting *Johnson v. State*, 511 So. 2d 1360, 1365 (Miss. 1987)).

¶45. At the hearing, the investigators testified to Singleton's educational background, literacy level, emotional/mental state, and criminal history, which showed his familiarity with the justice system. Singleton received a bachelor's degree from a university, worked as a test grader at a school prior to his arrest, appeared relaxed and not emotionally strained, and had a previous unrelated arrest.

¶46. Investigators Huddleston and Ellis both testified that Singleton did not appear confused or in any altered mental state during the entirety of the interrogation. Both stated Singleton gave detailed descriptions of certain geographic areas and freely spoke during the majority of the interrogation. At no time did Singleton ask the interrogation to stop due to illness or ask for medical assistance.

¶47. Singleton fails to demonstrate how his lack of medication led to an intoxicated or

sickened state that adversely affected the voluntariness of his confession.  Singleton merely

claims the unmedicated state compromised the voluntariness of his confession, even though

other portions of the interrogation occurred without incident.  After considering the totality

of the circumstances, the trial court found the State met its burden in proving Singleton

validly waived his rights and voluntarily confessed to the criminal allegations against him.

¶48.    The trial court's decision stands in the absence of the application of an incorrect legal

standard, manifest error, or a decision contrary to the overwhelming weight of the evidence.

The trial did not commit any of these errors.  Therefore, this issue has no merit.

¶49. **THE JUDGMENT OF THE TATE COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND V, GRATIFICATION OF LUST, AND SENTENCE OF FIVE YEARS ON EACH COUNT; COUNTS II, III, AND IV, SEXUAL BATTERY OF A CHILD UNDER FOURTEEN YEARS OF AGE, AND SENTENCE OF TWENTY YEARS ON EACH COUNT; COUNTS VI, VII, AND VIII, SEXUAL BATTERY OF A CHILD AT LEAST FOURTEEN BUT UNDER SIXTEEN YEARS OF AGE, AND SENTENCE OF TWENTY YEARS ON EACH COUNT; AND COUNTS IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, AND XVIII, POSSESSION OF CHILD PORNOGRAPHY, AND SENTENCE OF TEN YEARS ON EACH COUNT, WITH THE SENTENCE IMPOSED IN COUNT IX TO RUN CONSECUTIVELY WITH SENTENCES IMPOSED IN COUNTS I THROUGH VIII, AND WITH THE SENTENCES IN ALL OTHER COUNTS TO RUN CONCURRENTLY WITH ONE ANOTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT FOR 353 DAYS SERVED, AND PAYMENT OF $1,000 TO THE MISSISSIPPI CHILDREN'S TRUST FUND AND A $50,000 FINE FOR EACH OF COUNTS IX THROUGH XVIII, WITH $50,000 SUSPENDED FOR EACH OF COUNTS IX THROUGH XVIII, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.**

        **LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**